Clovis and Juanita ROBERTS, individually and as parents and natural guardians of Anfernee Roberts, a minor, Appellants,

v.

MEDICAL CITY DALLAS HOSPITAL, INC. d/b/a Columbia Hospital at Medical City Dallas f/k/a Galen of Texas, Inc. d/b/a Medical City Dallas Hospital, R. Cooper, R.N., MPS Healthcare of Dallas d/b/a Firstat Nursing Services, now known as MPS Healthcare of Texas, L.P., and Lillian ("Lynn") Midkiff, L.V.N., Appellees.

No. 06–98–00076–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 25, 1999.

Decided March 17, 1999.

Adrian L. Crane, Dallas, Ronald D. Wren, Attorney at Law, Bedford, for appellant.

R. Brent Cooper, John A. Scully, Diana L. Faust, Cooper & Scully, P.C., Gregory Joseph Lensing, Charles T. Frazier, Jr., Cowles & Thompson, Charles T. Frazier, Jr., Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Clovis and Juanita Roberts appeal from the order dismissing their medical malpractice action based on their failure to provide expert reports pursuant to the requirements of the Texas Medical Liability and Insurance Improvement Act. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon Supp.1999).

The Robertses sued Medical City Dallas Hospital, Inc. d/b/a Columbia Hospital at Medical City Dallas f/k/a Galen of Texas, Inc. d/b/a Medical City Dallas Hospital, R. Cooper, R.N., MPS Healthcare of Dallas d/b/a Firstat Nursing, now known as MPS Healthcare of Texas, L.P., and Lillian ("Lynn") Midkiff, L.V.N., for medical malpractice. They filed their suit on May 14, 1997, alleging that the defendants caused chemical burns to their newborn baby through the negligent use of an intravenous line. The Robertses hired the law firm of Adrian Crane & Associates, P.C., to prosecute their case, with Adrian Crane as the attorney in charge of the case. Before the lawsuit was filed, the Robertses' expert, Susan G. Vassallo, sent Crane a copy of her expert report. On June 23, 1997, Crane wrote a memo to his secretary asking her to send the expert report to the court and send a copy to all counsel of record. Crane's secretary failed to file the report; instead, she put it in one of the case files in the office. Crane assumed that she had sent the report as instructed, but he did not make further inquiry.

In October of 1997, Todd Durham was hired as an associate at Adrian Crane & Associates. Durham was a recent law school graduate and newly licensed attorney. Crane turned the management of the Robertses' case over to Durham. On November 4, 1997, Durham received a telephone call from Jonathan Campbell, an attorney representing one of the defendants. Campbell told Durham that an expert report had not been filed with the court, and that his client was going to file a motion to compel posting of a bond. After the telephone call, Durham pulled the file and found an unsigned affidavit of their expert. Believing that the unsigned affidavit was the document that needed to be filed with the court, Durham attempted several times to contact Vassallo, the expert, to get her to sign the affidavit, but without success. On November 18, 1997, Durham received a letter from Campbell stating that his client had filed a motion to compel posting of a bond, but if Durham would get the expert report to him by November 25, 1997, he would not request a hearing on the motion. After repeated attempts to get Vassallo's signature on the affidavit, Durham approached Crane on November 25, 1997, and told him there was a problem. Crane told Durham that the expert report was already on file, but after reviewing the file, he realized that his secretary had not filed the report as instructed. Crane then sent a copy to the court and all counsel of record on November 25, 1997.

On December 1, 1997, the defendants moved for dismissal with prejudice, pursuant to Article 4590i, § 13.01(e), as a sanction for the failure to timely file the expert report. In response, the Robertses filed a motion for extension of time, offering a single explanation for the untimely report. Attached to the motion were the affidavits of Crane and his secretary, testifying that Crane had told his employee to file the report, but due to a mistake, the report was not filed. On January 14, 1998, the trial court granted the Robertses' motion and ordered a thirty-day grace period to extend the time to file the expert report.

On April 8, 1998, the defendants filed another motion to dismiss and a motion to vacate the order granting the Robertses' motion for extension of time. In their motion to

vacate, the defendants asserted that they discovered that Durham knew an expert report was not on file before the expiration of 180 days, as required by Article 4590i, § 13.01(d). The trial court held a hearing in which Crane and Durham were the only witnesses. At this hearing, the Robertses asserted two reasons why the expert report had not been on file. The first reason was the mistake of Crane's secretary, and the second reason was that Durham was confused about what needed to be filed. Durham testified at the hearing that he did not read Article 4590i, even after the telephone call and letter from Campbell. Durham did testify that he believed the letter from Campbell was a Rule 11 agreement extending the time in which he needed to file. Additionally, Crane testified that he believed the expert report had already been filed when he assigned the Robertses' case to Durham. The trial court found the failure to file the expert report was the result of conscious indifference and rendered an order vacating the order granting the Robertses an extension of time. The court also dismissed the Robertses' case with prejudice.

The Robertses filed a motion to reconsider. At a hearing on the motion, the trial court reiterated his finding of conscious indifference by pointing to the fact that Crane had assigned the Robertses' case to an associate who had no experience in medical malpractice actions, without providing any apparent supervision during the course of the critical period when the expert report was to be on file. The court denied the motion to reconsider.

The Medical Liability and Insurance Improvement Act was amended in 1995 to require claimants either to provide to health care providers evidence concerning expert evaluations of the validity of their claim within 180 days after the commencement of the action, or to nonsuit their claim. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(d). If a claimant has failed to comply with Section 13.01(d) within the time required, the court shall, on the motion of the affected physician or healthcare provider, enter an order awarding as sanctions against the claimant: (1) reasonable attorney's fees and costs, (2) forfeiture of any cost bond respecting that defendant, and (3) the dismissal of the action of the claimant against that defendant, with prejudice to the claim's refiling. TEX.REV. CIV. STAT. ANN. art. 4590i, § 13.01(e). Under the facts of this case, the 180–day deadline passed on November 10, 1997.

The Robertses argue that Article 4590i contains three exceptions to the 180–day deadline for filing an expert report and that they met all three. First, they argue that Article 4590i, § 13.01(h) allows the parties to agree to extend the time to file the expert report. Through Campbell's letter on November 18, 1997, they contend, an agreement existed to extend the time for filing the report. Second, they argue that Article 4590i, § 13.01(f) allows a one-time extension of the 180–day deadline when the moving party shows good cause. The Robertses contend that they demonstrated good cause. Finally, the Robertses assert that Article 4590i, § 13.01(g) requires the trial court to grant them a grace period for thirty days because the failure to file Vassallo's expert report was not due to conscious indifference, but was the result of an accident or mistake. The defendants argue that no agreement was made, that Section 13.01(f) does not apply, and that the Robertses' attorneys demonstrated conscious indifference in filing the report late.

■ Article 4590i, § 13.01(h) allows the parties to extend any time period under Section 13.01(d) if the parties have signed and filed the agreement with the court. Campbell's letter never purported to extend the filing of the expert report. Rather, in the letter Campbell offered to postpone setting a hearing on a motion to compel the posting of a cost bond if Durham sent him a copy of the report by November 25, 1997.[1] We find that an agreement did not exist, and under Sec-

1. The letter, dated November 18, 1997, states as follows:

    As you know, I filed a Motion to Compel *Posting of Bond or Expert Report pursuant to* Article 4590i a couple of weeks ago. I have not yet received a copy of an expert report critical of our clients in this case. Please forward a copy of a report to me by November *25, 1997 or I will set our motion for hearing.*

tion 13.01(h), the time to file was not extended.

■ Next, the Robertses argue that the trial court should have granted a grace period for filing under Article 4590i, § 13.01(f). Section 13.01(f) provides that the court may, for good cause shown after motion and hearing, extend any time period specified in Section 13.01(d) for an additional thirty days. The Fort Worth Court of Appeals has held that Article 4590i, § 13.01(f) is intended for use when a plaintiff "needs a little extra time to comply" with the 180–day deadline. *Estrello v. Elboar*, 965 S.W.2d 754, 758 (Tex. App.-Fort Worth 1998, no pet.). The Robertses contend that they needed a little extra time to comply with the filing deadline. Because they filed the expert report on November 25, 1997, fifteen days after the November 10, 1997 deadline, a thirty-day extension would make their filing timely.

The defendants argue that a motion for an extension of time to file under Section 13.01(f) must be filed within the 180–day period prescribed by Section 13.01(d). They contend that Article 4590i provides for two extensions. Section 13.01(f) provides for a one-time thirty-day extension to the 180–day window, while Section 13.01(g) provides for an extension to plaintiffs who have not filed within the 180–day deadline. Because the Robertses' motion for extension of time was filed 203 days after the filing of the lawsuit, the defendants argue, they cannot seek relief under Section 13.01(f). The defendants assert that the Robertses could have only sought an extension under Section 13.01(g).

■ We do not read Section 13.01(f) to require the filing of the motion to be within the 180–day period under Section 13.01(d). If a plaintiff files the expert's report on the 195th day after filing the lawsuit, nothing in the statute prevents him from requesting a Section 13.01(f) extension, at any time, to extend the 180–day period to 210 days. And the trial court is free to grant such an extension. Section 13.01(f) does not limit when the plaintiff must file the motion to seek an extension of time.

■ However, the language of Section 13.01(f) states that the trial court *may* grant an extension on a showing of good cause. The use of the word "may" in a statute shows that the provision is directory and not mandatory. *Weldon v. Weldon*, 968 S.W.2d 515, 518 (Tex.App.-Texarkana 1998, no pet.). When a trial court's function is directory and not mandatory, the reviewing court should give deference and wide latitude to the decision of the trial court. We should only reverse upon a showing of a clear abuse of discretion. The Robertses contend that they showed good cause and were entitled to a thirty-day extension under Section 13.01(f). Even if the Robertses showed good cause, the trial court was still within its discretion to grant or deny the Section 13.01(f) extension. We find that the trial court did not abuse its discretion in refusing to grant an extension.

■ The Robertses also contend that the trial court erred by not granting an extension under Section 13.01(g). They assert that the failure to file the expert report before November 10, 1997, was the result of two circumstances, neither of which was intentional or the result of conscious indifference. First, Crane told his secretary to file the report on June 23, 1997, and she failed to do so. Second, Durham mistakenly believed he needed to file a signed affidavit of the expert rather than the expert report itself. The defendants argue the fact that Durham was told twice that an expert report was not filed and the fact that he did not read the statute shows conscious indifference.

■ Section 13.01(g) states,

Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

The statute does not define what constitutes intentional acts or conscious indifference, but the courts have construed these terms to apply in a manner similar to their application in a default judgment context. *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 536 (Tex.App.-Texarkana 1998, no pet.); *McClure v. Landis,* 959 S.W.2d 679, 681 (Tex.App.-Austin 1997, pet. denied); *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). If the Robertses' failure to file was not intentional or the result of conscious indifference, the trial court abused its discretion in denying the motion to extend time. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(g); *see also Horsley–Layman v. Angeles,* 968 S.W.2d at 536.

In determining whether there was intentional disregard or conscious indifference, we look to the knowledge and acts of the Robertses. *See Horsley–Layman v. Angeles,* 968 S.W.2d at 536. Proof of accident or mistake negates intent or conscious indifference. *McClure v. Landis,* 959 S.W.2d at 681. Some excuse, but not necessarily a good excuse, is enough to show a lack of intentional disregard or conscious indifference. Conscious indifference requires more than negligence. *Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d 467, 468 (Tex.1995); *Horsley–Layman v. Angeles,* 968 S.W.2d at 536.

Unless the defendants specifically controverted the evidence supporting the Robertses' mistake, the Robertses prevail on the issue of mistake and the statutory provision allowing an extension is satisfied. *See Bank One, Texas, N.A. v. Moody,* 830 S.W.2d 81, 85 (Tex.1992); *see also Horsley–Layman v. Angeles,* 968 S.W.2d at 536. At the hearing on the motion to vacate the order granting the extension of time, the Robertses put forth evidence through affidavits and testimony showing that their attorneys' failure to file the expert report was the result of accident or mistake. Crane had instructed a secretary at his law office to file the report, and she failed to do so. Crane stated that at the time he assigned Durham to the case, he believed the report was already on file. Crane's mistaken belief was not controverted by the defendants. Additionally, Durham testified that he believed the expert's signed affidavit was the document that needed to be on file after receiving notice that an expert report was not filed.

The defendants contend that the evidence of Durham's mistaken belief is controverted by the fact that Campbell told Durham no report was on file and Durham did not read the statute after receiving notice. We do not agree. Essentially, Durham's mistaken belief was that the signed affidavit of the expert was the document that needed to be on file. The evidence that Campbell told Durham no expert report was filed does not controvert Durham's mistaken belief that what he was attempting to file was not the expert report. The defendants offered no evidence that Durham knew the correct document that needed to be filed and intentionally failed to file it. Durham testified that, even after receiving the second notice that no expert report was on file, he still attempted to obtain a signed affidavit by the expert, believing it to be the document the defendants wanted. Additionally, Durham's failure to read the statute does not demonstrate conscious indifference. His failure to read the statute is certainly negligence, but negligence does not equate to conscious indifference. *See Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d at 468.

At the hearings on the motion to vacate and the motion to reconsider the motion to vacate, the trial court stated that it found conscious indifference because Crane had assigned the case to an associate who had no experience in medical malpractice actions. The trial court also found that Crane's assignment, without any apparent supervision, during the course of the critical period when the expert report was to be on file, was conscious indifference. However, Crane testified that he assigned the case to Durham under the assumption that the expert report had already been filed. The defendants did not controvert this mistaken belief. Crane also stated that he believed Durham was a qualified attorney who had just passed the bar exam and graduated from an accredited law school. Again, the defendants did not specifically contradict Crane's testimony.

The record is devoid of any evidence that Crane's mistaken belief that the report was on file when he gave the case to an inexperienced associate was consciously indifferent.

Accordingly, we conclude that the trial court abused its discretion in not granting the Robertses' extension of time to file the required expert report. We reverse the judgment and remand the cause to the trial court for further proceedings. We need not address the other points of error raised by the Robertses.