In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00037-CV


______________________________




MARY C. WALKER, Appellant



V.



DR. CHARLES N. THORNTON; COLLOM AND CARNEY


CLINIC ASSOCIATION; SISTERS OF CHARITY OF THE


INCARNATE WORD, HOUSTON, TEXAS, d/b/a 


ST. MICHAEL HEALTH CARE; PRESBYTERIAN


HOSPITAL OF DALLAS, Appellees




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 00C0441-202




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Mary Walker appeals from a judgment dismissing her malpractice lawsuit against
various doctors and health care institutions. According to her allegations, she underwent
laser cataract surgery, had complications resulting in a massive infection, and lost vision
in her left eye. Walker was represented by counsel at trial. The judgment states the trial
court dismissed her lawsuit because counsel did not file an expert report as required by the
Texas Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art.
4590i, § 13.01(d) (Vernon Supp. 2002). The trial court found that a motion to extend time
to file an expert report was without merit because counsel failed to show that the lack of
the report was due to accident or mistake.

 A brief prepared by Walker's trial counsel was filed in this Court on May 17, 2001. 
Walker informed this Court, after the brief had been filed, that she had discharged her trial
counsel before the brief's preparation and that she strongly objected to its filing. 
Accordingly, that brief will not be considered in our resolution of this appeal. 

 In her brief, prepared pro se, Walker complains that her expert report was not filed
as required by Article 4590i because her attorney, Woodson Walker, (1) was incompetent and
because she was misled by his repeated statements that her claim was in the process of
being settled. She alleges this constitutes a violation of the applicable disciplinary rules. 
Her second issue reads as follows: 

 To prevent Plain Error or Manifest of Injustice because Mary C. Walker,
"Who is a good USA Citizen", was done wrong by professional's Misconduct
that this Court of Appeals has the power to stop and should stop for the sake
of our United States of America People.


 Walker has, at best, only indirectly raised any complaint alleging error by the trial
court. Her position and the contents of her arguments have created a dilemma for this
Court, because the right to appeal is by definition only from a final judgment rendered by
a trial court, (2) and an appeal may be successfully maintained only if the appellant can show
the trial court committed error justifying reversal. (3)

 We have before us a judgment about which the appellant has not complained. 
Further, she has not directly argued or set out any argument supported by legal authority
to show any error by the trial court. Instead, she argues in her brief that trial counsel was
incompetent and that, because of his incompetence, he failed to timely obtain and file an
expert report-a document that is absolutely critical to the pursuit of this cause of action. 

 Walker asks this Court to provide affirmative relief by reinstating her lawsuit based
on incompetence of counsel. This Court cannot provide that relief unless we find the trial
court committed error. Her claim that counsel was incompetent is not one that would justify
reversal, but is a claim that might be pursued in a separate proceeding.

 Texas Rule of Appellate Procedure 43.3(b) permits this Court to remand for a new
trial in the interests of justice. See Tex. R. App. P. 43.3(b); Texas Parks & Wildlife Dep't
v. Wilson, 991 S.W.2d 93, 97 n.9 (Tex. App.-Austin), pet. denied, 8 S.W.3d 634 (Tex.
1999) (per curiam); 6 McDonald & Carlson, Tex. Civ. Prac. § 33.14 (1998). Similarly, we
are to liberally construe briefing rules in the interests of justice. Tex. R. App. P. 38.1(e),
38.9; Shull v. United Parcel Serv., 4 S.W.3d 46, 51 (Tex. App.-San Antonio 1999, pet.
denied), cert. denied, 531 U.S. 835, 121 S.Ct. 94, 148 L.Ed.2d 53 (2000). 

 We can determine from Walker's brief that her general complaint lies in the
dismissal of her lawsuit because the expert opinion was not timely filed, which necessarily
implicates the trial court's refusal to grant additional time in which to obtain such an
opinion. On our own initiative, and as authorized by Tex. R. App. P. 2, we find good cause
to suspend the operation of the briefing rules in this case because justice requires this
Court to review the underlying basis for the trial court's decision to dismiss. That issue was
raised marginally by Walker's brief as the basis for her complaint against her counsel, and
the issue was adequately briefed by the appellees in their response. Accordingly, in the
interests of justice, we will review the underlying allegation.

 Walker's suit was dismissed by the trial court pursuant to motions filed by the
appellees seeking dismissal because no expert report had been filed within the 180-day
time period set out in Article 4590i, no motion seeking additional time had been filed during
the thirty-day grace period (which had long since expired), and also arguing there was no
good reason for the delay which would permit the court to implement the final catchall
extension provision of Section 13.01(g). Tex. Civ. Prac. & Rem. Code Ann. art. 4590i
(Vernon Supp. 2002).

 The lawsuit was filed on March 16, 2000. The 180-day time period for the expert
report expired on September 12, 2000. Motions to dismiss for failure to comply with the
expert report requirement were filed by the various defendants on November 6, 7, and 22,
2000, and on January 19, 2001. However, Walker's counsel took no action until
January 12, 2001, when he filed a response and a motion to extend time to file an expert
report. A hearing took place ten days later, on January 22, 2001. Clearly, the thirty-day
grace period authorized in Section 13.01(f) had expired and that section cannot apply to
this case. 

 Our review is thus focused on the request for additional time to file the expert report,
which may be granted in some circumstances under Section 13.01(g). 

 Section 13.01(g) provides for a thirty-day grace period, as follows:

 Notwithstanding any other provision of this section, if a claimant has failed
to comply with a deadline established by Subsection (d) of this section and
after hearing the court finds that the failure of the claimant or the claimant's
attorney was not intentional or the result of conscious indifference but was
the result of an accident or mistake, the court shall grant a grace period of
30 days to permit the claimant to comply with that subsection. A motion by
a claimant for relief under this subsection shall be considered timely if it is
filed before any hearing on a motion by a defendant under Subsection (e) of
this section. 

Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g).

 Section 13.01(g) contains no requirement that the extension be sought before the
expiration of 180 days. It requires only that the request for an extension be made "before
any hearing" on a motion to dismiss under Section 13.01(e). Pfeiffer v. Jacobs, 29 S.W.3d
193, 197 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). Although the time delay in
this case was considerable, Walker's motion for an extension was timely under Section
13.01(g) because it was filed before the hearing on the defendant's motion to dismiss. 
Accordingly, the trial court had discretion to consider Walker's motion. 

 This Court addressed a similar situation in Roberts v. Med. City Dallas Hosp., Inc.,
988 S.W.2d 398 (Tex. App.-Texarkana 1999, pet. denied). In reviewing this section of the
statute, we recognized that it does not define what constitutes intentional acts or conscious
indifference. We then adopted the construction of those terms as formulated by other
courts and applied them in a manner similar to their application in a default judgment
context. (4) If Walker's failure to file the expert opinion was not intentional or the result of
conscious indifference, the trial court abused its discretion in denying the motion to extend
time. 

 In determining whether there was intentional disregard or conscious indifference,
we look to the knowledge and acts of Walker. Id. at 403. Proof of accident or mistake
negates intent or conscious indifference. McClure v. Landis, 959 S.W.2d 679, 681 (Tex.
App.-Austin 1997, pet. denied). Some excuse, but not necessarily a good excuse, is
enough to show a lack of intentional disregard or conscious indifference. Conscious
indifference requires more than negligence. Smith v. Babcock & Wilcox Constr. Co., 913
S.W.2d 467, 468 (Tex. 1995).

 At the hearing on the motion to dismiss, Walker's counsel introduced evidence
through affidavits and testimony. Counsel's affidavit states he had consulted with a
physician (Dr. Roger Harper) at the University of Arkansas for Medical Sciences who had
offered a professional opinion that negligence occurred in this case, but after suit was filed,
Harper refused to appear as a witness (after discovering that the doctor in question was
a former student). Counsel stated that he had attempted to convince Harper to change his
mind, to no avail; that he had attempted to obtain a second medical opinion from
Dr. John F. Kozlovsky; and that he was "confident that an expert opinion is imminent." 

 The record shows the following timetable:

Sept. 21, 1999 Records sent to Dr. Harper


March 16, 2000 Suit filed


May 7, 2000 Responsive letter from Dr. Kozlovsky, acknowledging receipt of the
file and setting out his fees


Sept. 12, 2000 The 180-day time period for the expert report expired


Oct. 12, 2000 Thirty-day grace period authorized in Section 13.01(f) expired


Nov. 6, 2000 Filing of first motion to dismiss for failure to file expert report 


 Letter to Dr. Kozlovsky thanking him for his May letters, enclosing
money, and asking him to call promptly 


Nov. 7, 2000 Filing of second motion to dismiss for failure to file expert report


Nov. 8, 2000 Letter from Dr. Laurence R. Dry (Tennessee M.D.) acknowledging
receipt of the medical records and requiring a $500.00 review fee in
advance


Nov. 9, 2000 Letter to Dr. Harper stating he was unsuccessful in obtaining a written
report from Dr. Kozlovsky and asking for his help


Nov. 22, 2000 Filing of third motion to dismiss for failure to file expert report


Nov. 28, 2000 Letter to Dr. Dry enclosing a check to replace the check lost by Airborne Express


Jan. 12, 2001 Filing of plaintiff's response and motion to extend time

Jan. 19, 2001 Filing of fourth motion to dismiss for failure to file expert report

Jan. 22, 2001 Hearing on motions to dismiss

Counsel also stated in his response he had assigned the case to a new associate who was
unfamiliar with Texas trial practice and who has since resigned from the firm. At the
hearing, counsel stated he had an oral opinion by Dr. Harper before the suit was filed. 
Counsel took the position this record showed he had been "feverishly" attempting to obtain
a written expert report up to the date of the hearing. 

 The question is whether the trial court abused its discretion by denying the motion
seeking additional time. According to the plain language of the statute, an extension of
time must be granted if the requirements of Section 13.01(g) are met and if the verified
motion sets forth facts which, if true, would negate intentional or consciously indifferent
conduct. See Dir., State Employees Workers' Comp. Div. v. Evans, 889 S.W.2d 266, 268
(Tex. 1994). Some excuse, but not necessarily a good excuse, is enough to warrant an
extension of time to file the expert report, so long as the act or omission causing the failure
to file the report was, in fact, accidental. Horsley-Layman v. Angeles, 968 S.W.2d 533, 536
(Tex. App.-Texarkana 1998, no pet.); Jackson v. Mares, 802 S.W.2d 48, 50 (Tex.
App.-Corpus Christi 1990, writ denied).

 The Houston Court of Appeals in Pfeiffer set out the standards for review as follows.

 Once it is determined that a motion for an extension under Section
13.01(g) is timely, the court must decide whether the claimant's failure to
meet the deadline is excused by accident or mistake, and was not intentional
or the result of conscious indifference. The plaintiff, as movant, has the
burden "to show some excuse of accident or mistake to establish that she
did not act intentionally or with conscious indifference." Schorp, 5 S.W.3d
at 732 (citing McClure v. Landis, 959 S.W.2d 679, 681 (Tex. App.-Austin
1997, pet. denied)); see also Horsley-Layman, 968 S.W.2d at 536 (noting
that the burden of production "clearly" rests with the party moving for the
extension). Courts interpreting Section 13.01(g) have held that "[s]ome
excuse, but not necessarily a good excuse, is enough to warrant an
extension of time to file the expert report, so long as the act or omission
causing the failure to file the report was, in fact, accidental." Nguyen v. Kim,
3 S.W.3d 146, 152 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (citing
Horsley-Layman, 968 S.W.2d at 536) (emphasis added); see also Wood,
988 S.W.2d at 832 (citations omitted). Generally, an accident or mistake in
this context is characterized by inadequate knowledge of the facts or an
unexpected happening that precludes compliance. See Nguyen, 3 S.W.3d
at 152. For example, "calendaring errors" have been held to establish
accident or mistake. See id.; see also Presbyterian Healthcare Sys. v.
Afangideh, 993 S.W.2d 319, 323 (Tex. App.-Eastland 1999, pet. denied)
(citations omitted). By contrast, conscious indifference means "failing to take
some action which would seem indicated to a person of reasonable
sensibilities under similar circumstances." Id. (citing Prince v. Prince, 912
S.W.2d 367, 370 (Tex. App.-Houston [14th Dist.] 1995, no writ)). In
determining whether there was intentional or conscious indifference, the
court looks to the knowledge and acts of the claimant or his attorney. See
Horsley-Layman, 968 S.W.2d at 536 (citing Strackbein v. Prewitt, 671
S.W.2d 37, 39 (Tex. 1984)).


Pfeiffer, 29 S.W.3d at 198.

 The court concluded the plaintiff did not demonstrate that the failure to comply was
excused by either accident or mistake, finding she intentionally failed to file the report
because her physician required a further examination. 

 Although Pfeiffer complains that her physician "required seeing Appellant for
the six (6) month period prior to March 12, 1999," she presents no excuse
which shows that her failure to comply with Section 13.01 "was, in fact,
accidental." Because Pfeiffer did not meet her burden to show that her
failure to timely file an expert report was the result of an accident or mistake,
as required to obtain an extension of time under Section 13.01(g), the trial
court did not abuse its discretion by granting Dr. Jacobs's motion to dismiss
her case with prejudice. 

Id. at 198-99 (citation omitted).

 The present case is unlike the situation faced by this Court in Roberts, because in
that case counsel did attempt to file a report, but what he attempted to file was not the
correct document. We concluded that counsel's failure to read the statute did not
demonstrate conscious indifference, only negligence. Roberts, 988 S.W.2d at 403, citing
Smith, 913 S.W.2d at 468. We also found that giving the file to an inexperienced associate
was not conscious indifference in light of counsel's statements he believed (incorrectly) the
expert report had been filed.

 The question is whether the case now before this Court contains facts which would
support the Court's conclusion that conscious indifference was shown to exist. 

 It does. Counsel did nothing for a four-month period, despite knowing he had no
expert report in hand. His failure to take any affirmative action from May, through the date
on which the report was due, and until a motion to dismiss was filed in November does not
reflect mistake or accident. Even after the 180 days for filing the report expired on
September 12, 2000, counsel made no effort to obtain the report until November 6, 2000,
the date the first motion to dismiss was filed. There is no suggestion that counsel was
unaware of the necessity (and we do not suggest ignorance is a defense), and the only
excuse was the doctors had not yet provided counsel with an opinion. This closely
parallels the facts in Pfeiffer.

 We conclude that, based on the evidence before it, the trial court did not abuse its
discretion by dismissing Walker's lawsuit in accordance with Article 4590i, § 13.01(e). 


 Because of our disposition of this ground of error, we need not reach the alternative
arguments raised by appellees Charles N. Thornton and Presbyterian Hospital of Dallas. 
 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: January 3, 2002

Date Decided: January 23, 2002


Publish

1. The plaintiff in this case is Mary Walker. Her trial counsel's name is Woodson
Walker. The attorney will hereafter be referred to as "counsel" to avoid confusion.
2. Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997).
3. Tex. R. App. P. 44.1. 
4. Citing Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126
(1939); Horsley-Layman v. Angeles, 968 S.W.2d 533, 536 (Tex. App.-Texarkana 1998,
no pet.); McClure v. Landis, 959 S.W.2d 679, 681 (Tex. App.-Austin 1997, pet. denied).


span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-09-200-CR%20Lindley%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00200-CR

                                                ______________________________

 

 

                            DANIEL DONGRELE LINDLEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0819779

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            Just
a day after Daniel Dongrele Lindley was placed on deferred adjudication
community supervision for two cases of attempted capital murder, the State
moved to adjudicate Lindleys guilt and have his supervision revoked.  The trial court found Lindley was in
violation of the terms and conditions of his supervision, adjudicated Lindley,
and sentenced him to forty-five years in prison for each case.[1]  We affirm the trial courts rulings and
sentences.  We find no error in the States
failure to consent in writing to Lindleys waiver of a jury trial; the evidence
is sufficient to support the adjudication; and Lindley has not demonstrated any
due process violation.   

I.          States Failure to
Waive Jury Trial

            Lindley
claims the trial courts judgment is void because there is nothing in the record
showing the State consented, in writing, to Lindleys waiver of a jury trial.[2]  Lindley failed to timely appeal the order
placing him on community supervision.[3]  An appeal from an order revoking community
supervision is limited to the propriety of the revocation.  Corley v. State, 782 S.W.2d 859, 861
n.2 (Tex. Crim. App. 1989); Hoskins v. State, 425 S.W.2d 825, 828 (Tex.
Crim. App. 1967); Holiday v. State,
983 S.W.2d 326, 32728 (Tex. App.Houston [1st Dist.] 1998, pet. refd) (op.
on rehg).  The right to raise issues
arising from the original plea proceeding is available only in appeals taken
when deferred adjudication community supervision is first imposed.  Manuel v. State, 994 S.W.2d 658, 66162
(Tex. Crim. App. 1999). 

            Lindley
is correct that if the judgment placing him on deferred adjudication community
supervision was void, he could raise that jurisdictional shortcoming in his
appeal from the order adjudicating him.  Nix v. State, 65 S.W.3d 664, 668 (Tex.
Crim. App. 2001).  A judgment of conviction
is void in very rare circumstances, none of which are present here.  Id.


            Lindley
argues that because there is nothing in the record, specifically nothing in
writing, indicating the State consented to Lindleys waiver of a jury trial,
the trial court had no jurisdiction to entertain Lindleys plea.  The requirement of obtaining the States
consent in order to waive a jury trial protects the interests of the State to
insist on a jury trial, not the defendants rights.  [C]onsent by the state is not a
jurisdictional requisite to the rendition and entry of an otherwise valid
judgment.  Shaffer v. State, 769 S.W.2d 943, 944 (Tex. Crim. App. 1989).  The States failure to provide written
consent as required by Article 1.13 is not error as to a defendant or from
which a defendant can complain.  Id. at 945.  We overrule Lindleys first point of
error.  

II.        Sufficient Evidence to
Adjudicate Guilt

            Lindley
was indicted for two cases of attempted capital murder:  he was charged with attempting to kill Leigh
Ann Smith and Smiths daughter, who was seven at the time of trial.  One of the terms and conditions of Lindleys
community supervision was that he was not to communicate with either Smith or
her daughter or go within 1000 feet of either victim or their residence.  About 5:00 or 6:00 p.m. the day Lindley pled
guilty and was placed on community supervision, Smith saw Lindley in a car
driven by Lindleys friend.  Smith and
her daughter were at a local water park in Sulphur Springs.  Smith recognized Lindleys friend, the driver
of the car, who was a black male.  Smith
saw Lindley and testified she made eye contact with him.  Smith said Lindley and his friend drove
around the park a few and multiple times. 
She testified the pair continued to circle the park after Lindley and
Smith exchanged eye contact.  There was
testimony the park was within 1,000 feet from the street; Smith testified her
daughter was at the park and thus within the same 1,000 feet.  

            Lindleys
girlfriend, Bridgette Childress, testified that she, a white female, was
driving Lindley around the park on the day in question, after having picked him
up from jail.  She said they drove around
the park one time, looking for a friend of Lindley, then left the area.  She said they did not see Smith at the
park.  Childress also testified that the
day before the adjudication hearing, Smith told Childress she was not sure she
had seen Lindley on the day in question. 
Both witnesses acknowledged that Lindleys grandmother, with whom Lindley
lived before being sent to jail, lived in the neighborhood of the park.    

            Our
review of an order revoking community supervision is limited to determining
whether the trial court abused its discretion. 
Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim. App.
2006).  In determining questions
regarding sufficiency of the evidence in community supervision revocation
cases, the State must prove, by a preponderance of the evidence, that the
defendant violated a term of his or her community supervision.  Id. 
A preponderance of the evidence exists when the greater weight of the
credible evidence creates a reasonable belief that the defendant has violated a
condition of his or her supervision.  Id.
at 764; Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App.
1974).

            The
trial court is not authorized to revoke supervision without a showing that the
probationer has violated a condition of the community supervision imposed by
the court.  DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim.
App. 1987).  In a community supervision
revocation hearing, the trial judge is the sole trier of fact.  Jones v. State, 787 S.W.2d 96, 97
(Tex. App.Houston [1st Dist.] 1990, pet. refd).  The trial judge also determines the
credibility of the witnesses and the weight to be given to their
testimony.  Id.  The judge may accept or reject any or all of
the witnesses testimony.  Mattias v.
State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987).   

            Here,
distinct conflicts were presented.  Smith
testified that Lindley was in a vehicle being driven down the street directly
in front of her when she was at the water park. 
She recognized him and his friend, a black male, and identified the
automobile they were in.  As he passed
by, he looked directly at her and they made eye contact; the driver of the
vehicle kept driving around the park several times, and she was certain that Lindley
saw her there.  Childress, a white
female, testified that she picked Lindley up from jail and they drove by the
park once and did not see Smith.  The
trial court was required to judge the credibility of the witnesses and
determine if Lindley and a black male drove several times around the park and
made eye contact with Smith, or if Lindley, riding with a white female, drove
only once around the park without encountering Smith.  The trial court announced that it had observed
the countenances of the witnesses and has judged the credibility of the
witnesses in arriving at its conclusion. 
The trial court did not abuse its discretion in finding sufficient
evidence of a violation of the order.    

III.       Due Process 

            Lindley
next argues that unless the State is required to prove that he intentionally or
knowingly came within 1,000 feet of the victims, that condition is void for
vagueness and, therefore, his due process rights were violated when the trial
court revoked his supervision.  Usually void
for vagueness issues are raised in an attack on the constitutionality of a
statute.  See generally Gillenwaters v. State, 205 S.W.3d 534, 536 (Tex.
Crim. App. 2006); Perez v. State, 261
S.W.3d 760, 76869 (Tex. App.Houston [14th Dist.] 2008, pet. refd).  Here, Lindley is complaining not about a
statute, but about a term and condition imposed on him by the trial court, to
which Lindley affixed his signature and thumbprint.  An award of community supervision is not a
right, but a contractual privilege, and conditions thereof are terms of the
contract entered into between the trial court and the defendant.  Therefore, conditions not objected to are
affirmatively accepted as terms of the contract.  Speth v. State, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).  Lindley made no objection to the trial court
that the terms and conditions were unclear at the time they were imposed.  A defendant cannot complain about community
supervision conditions for the first time on appeal.  Id. at 535.  

            The
argument that Lindley should not be held responsible because he did not know that
Smith and her daughter were at the park is belied by the evidence that Lindley continued
to circle the park after first encountering Smith.  Further, the case on which Lindley relies is
distinguishable.  In Leach v. State, 170 S.W.3d 669 (Tex. App.Fort Worth 2005, pet.
refd), the appellant challenged the constitutionality of a statute for
vagueness.  Tex. Code Crim. Proc. Ann. art. 42.12, § 13B(a)(1)(B) (Vernon
Supp. 2010) (mandating that as to one placed on community supervision for a
sexual offense against a child, the order required that probationer not go
within 1,000 feet of premises where children commonly gather).  Here, the complaint does not concern a
statute, but a discretionary condition imposed by the trial court which was not
challenged at the time it was imposed. 
This condition is much more specific than the one in LeachLindley was not to go within 1,000
feet of a specifically named victim, which is quite different from the broad
language in Leach regarding where
children commonly gather.  Even in Leach this argument was rejected when
the appellate court found ample evidence in the record that Leach was aware
children were regularly present in the apartment complex common area where
Leach was seen watching the children.  Leach, 170 S.W.3d at 675.    

            Lindley
also argues that the trial court erroneously considered evidence of conduct
which was not alleged in the States motion to adjudicate.  The day before the adjudication hearing,
Childress was on the telephone with Lindley and gave the telephone to Smith,
thus facilitating communication between Lindley and Smith.  This would be in violation of the terms of
Lindleys supervision order, but was not alleged in the motion.  The authority of the trial court to revoke community
supervision is limited by the allegations of which the probationer has due
notice, those which are contained in the written motion to revoke filed during
the term of the probationary period.  Zillender v. State, 557 S.W.2d 515 (Tex.
Crim. App. 1977).

            At
the conclusion of the hearing, the trial court announced that Lindley violated
condition (cc-1) of the community supervision order (Defendant shall not . . .
go within 1000 feet of the victim(s)) and immediately stated, Im going to
find him guilty at this time of attempted capital murder.  The trial court had the authority to revoke
community supervision and adjudicate Lindleys guilt on a finding of any
violation of community supervision.  Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. [Panel Op.] 1980).  The
evidence affirmatively shows that the trial court revoked the community
supervision and found Lindley guilty of the offense based on the violation of
the condition as alleged in the motion to adjudicate.  This finding, which was supported by
evidence, was sufficient to find Lindley in violation of his terms and
conditions and, therefore, sufficient to support adjudication and
revocation.  

            We affirm the judgment of the trial
court.  

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          November 30, 2010

Date Decided:             December 17, 2010

 

Publish

 











[1]Lindley
presents a single brief addressing both cases. 
The issues and arguments are the same for both convictions, and we reach
the same conclusion in both cases. 
Please see our opinion of instant date, Lindley v. State, cause number 06-09-00201-CR.  

 





[2]When
a defendant wishes to waive his or her right to a jury trial, among other
requisites, the defendant must secure the consent of the State:  the consent and approval of the attorney
representing the State shall be in writing, signed by him, and filed in the
papers of the cause before the defendant enters his plea.  Tex.
Code Crim. Proc. Ann. art. 1.13 (Vernon 2005).

 





[3]Lindleys
instant appeals are the result of the Texas Court of Criminal Appeals granting
Lindley out-of-time appeals.  Ex parte Lindley, Nos. AP-76,246,
AP-76,247 (Tex. Crim. App. Oct. 28, 2009). 
The Texas Court of Criminal Appeals opinion allows Lindley to appeal
the judgments of conviction.  We see
nothing in the record or the high courts opinion indicating Lindley sought or
was granted the right to tardily appeal from the order placing him on deferred
adjudication community supervision.