In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00115-CV
______________________________


DEBRA THOMAS AND STAN THOMAS, Appellants
 
V.
 
GEARALD FARRIS, INDIVIDUALLY AND D/B/A
FARRIS CHIROPRACTIC CLINIC, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 2002-1374-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Debra Thomas and Stan Thomas alleged that Dr. Gearald Farris, a chiropractor, was
negligent in failing to x-ray Debra's hips and discover fractures incurred after she had an automobile
accident. The Thomases appeal the summary judgment granted to Dr. Farris. We affirm the
judgment of the trial court. 
Background
            On June 1, 2000, Debra was involved in an automobile accident. The next day, she went to
see Dr. Farris, complaining of pain in her neck and upper shoulders. She also reported that she had
been experiencing hip pain for one year. She continued to see Dr. Farris for a month. In the latter
part of June, she traveled to San Francisco. After returning from California, she began to have more
hip pain. A few days later, when she was in New Orleans, she tripped in a restaurant and
developed severe hip pain. On returning from New Orleans, she went to Good Shepherd Hospital
with her hip severely swollen and extremely painful. She was diagnosed with fractures of both hips
(a femoral neck fracture of both hips). The right hip was treated conservatively, but Dr. Stephen
Littlejohn operated on Debra's left hip July 6, 2000. She later saw Dr. Charles Rutherford, who
operated on Debra's right hip. Eventually, she had a total replacement of the left hip. The Thomases
filed suit against Dr. Farris alleging negligence in his treatment of Debra. Dr. Farris filed a motion
for summary judgment (both traditional and no-evidence). The trial court granted the traditional
motion for summary judgment. The Thomases appeal alleging the trial court erred in granting the
summary judgment because there are material questions of fact as to (1) whether Dr. Farris was
negligent in failing to diagnose/x-ray Debra's hips, which caused or exacerbated her hip fractures,
and (2) whether x-rays of Debra's hips could have diagnosed a pre-existing hip fracture and
prevented further injury.
Standard of Review 
            The trial court granted the traditional motion for summary judgment. In a traditional motion
for summary judgment, the party moving for summary judgment carries the burden of establishing
that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See
Tex. R. Civ. P. 166a(c); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Calvillo
v. Gonzalez, 922 S.W.2d 928, 929 (Tex. 1996); Wornick Co. v. Casas, 856 S.W.2d 732, 733 (Tex.
1993); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). When reviewing a
summary judgment, we take as true all evidence favorable to the nonmovant. See Sci. Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). We indulge every reasonable inference to resolve
any doubts in the nonmovant's favor. Id. An appellate court may affirm the judgment on any
grounds properly raised before the trial court, even when the trial court grants summary judgment
specifically on fewer than all grounds asserted. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623,
625–26 (Tex. 1996). A defendant who conclusively negates at least one of the essential elements
of the plaintiff's cause of action is entitled to a summary judgment. Little v. Tex. Dep't of Criminal
Justice, 148 S.W.3d 374, 381 (Tex. 2004). 
Proof Required in Medical Malpractice Cases
            In a medical malpractice case, the plaintiff must prove by competent testimony that the
defendant's negligence proximately caused the plaintiff's injury. Duff v. Yelin, 751 S.W.2d 175, 176
(Tex. 1988) (citing Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex. 1965); Bowles v. Bourdon, 148
Tex. 1, 5, 219 S.W.2d 779, 782 (1949)). The plaintiff must establish a causal connection beyond the
point of conjecture; proof of mere possibilities will not support the submission of an issue to the jury. 
Duff, 751 S.W.2d at 176 (citing Lenger v. Physician's Gen. Hosp., Inc., 455 S.W.2d 703, 706 (Tex.
1970)). In a medical malpractice case, the plaintiff is required to show evidence of a "reasonable
medical probability" or "reasonable probability" that his or her injuries were proximately caused by
the negligence of one or more of the defendants. Park Place Hosp. v. Estate of Milo, 909 S.W.2d
508, 511 (Tex. 1995). The ultimate standard of proof on the causation issue is "whether, by a
preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in
bringing about the harm and without which the harm would not have occurred."  Id. (quoting Kramer
v. Lewisville Mem'l Hosp., 858 S.W.2d 397, 400 (Tex. 1993)). A plaintiff is not required to establish
causation in terms of medical certainty, nor is he or she required to exclude every other reasonable
hypothesis. Bradley v. Rogers, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ
denied) (citing King v. Flamm, 442 S.W.2d 679, 682 (Tex. 1969); Rose v. Friddell, 423 S.W.2d 658
(Tex. App.—Tyler 1967, writ ref'd n.r.e.)). While expert medical testimony concerning the possible
causes of the condition in question is admissible to assist the trier of fact in evaluating other evidence
in the case, a possible cause only becomes probable when, in the absence of other reasonable causal
explanations, it becomes more likely than not that the injury was a result of its action. Bradley, 897
S.W.2d at 954.
Analysis and Conclusion
            Dr. Farris argues that the trial court correctly granted his traditional motion for summary
judgment because the evidence conclusively established that his actions did not cause or exacerbate
Debra's hip fractures. 
            In support of this motion, Dr. Farris relies on the deposition testimony of Dr. Littlejohn, an
orthopedic surgeon who operated on Debra's left hip. Dr. Littlejohn testified that Dr. Farris was not
responsible for any injuries to Debra's right hip. He further testified that, even if Dr. Farris had
x-rayed Debra, it would not have changed her outcome. Specifically, Dr. Littlejohn testified as
follows: 
A.It is a medical probability that if he had taken an x-ray three weeks
prior to her seeing me that it wouldn't have influenced her outcome.
 
Q.Okay. All right. Thank you. And in your opinion is there anything
Dr. Farris did or did not do to cause or exacerbate Mrs. Thomas's right hip fracture?
 
A.In my opinion there is nothing that Dr. Farris did to exacerbate her hip
fracture.

            As to Debra's left hip, Dr. Littlejohn testified similarly. Dr. Littlejohn, who surgically placed
three pins across the femoral neck of Debra's left hip, stated that, even if Dr. Farris had taken an
x-ray of Debra's left hip and discovered the nondisplaced left hip fracture, her course of treatment
would have been the same and that, in his opinion, there was nothing Dr. Farris did to cause or
exacerbate the left hip fracture. 
            For further treatment on her right hip, Debra saw Dr. Rutherford. Dr. Rutherford operated
on Debra's right hip and agreed that, if Dr. Farris had x-rayed Debra's right hip on June 27 after she
returned from her trip to San Francisco, her outcome would not have been any different. He further
testified that nothing Dr. Farris would or would not do changed the way that Debra heals her
fractures. 
            The only medical evidence the Thomases presented was Dr. Kelly Hood, D.C. Dr. Hood
stated that, in his opinion, Dr. Farris should have taken x-rays of Debra's hips. He further stated that
failing to take the x-ray of Debra was not "handled correctly" and that "poor record keeping has got
him in the situation that he is in now." However, Dr. Hood provided no testimony that, if such
conduct of Dr. Farris was a violation of the standard of care for chiropractors, it caused or
exacerbated Debra's hip fractures.
            The Thomases further allege that Dr. Farris' own statements raised a material fact issue as
to whether his failure to x-ray/diagnose Debra's hip condition exacerbated her femoral neck stress
fracture. In supporting this argument, the Thomases point to the testimony of Dr. Farris as follows:
Q.. . . . Can failure to stay off of a leg that has an incomplete stress
fracture going across the femoral neck cause a stress fracture to go ahead and finish
the break across?
 
A.It's possible.

            In determining medical causation or exacerbation of an injury, there must be evidence that
some particular causal connection is a reasonable medical probability, that is, a result reasonably to
be anticipated. Reasonable probability, in turn, is determinable by a consideration of the substance
of the testimony of the expert witness and does not turn on semantics or on the use by the witness
of any particular term or phrase. Ins. Co. of N. Am. v. Myers, 411 S.W.2d 710, 713 (Tex. 1966). The
Texas Supreme Court has upheld a finding of causal connection based on the testimony of an expert
witness stating, "I think that the chronological events that have happened makes it a strong
possibility that this could help precipitate a heart attack." Ins. Co. of N. Am. v. Kneten, 440 S.W.2d
52, 54 (Tex. 1969). In Kneten, the expert, when asked to look at the question from the standpoint
of circumstantial evidence and say if medical probability was reasonable, answered, "Well,
circumstantially, I would say, yes, strong possibility." Id. However the Texas Supreme Court, in
an opinion issued on the same day as Kneten, also held that there was a logical distinction between
a reasonable medical "probability" and a medical "possibility." There can be many possible "causes,"
indeed, and an infinite number of circumstances can cause an injury. But a possible cause only
becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more
likely than not that the injury was the result of its action. This is the outer limit of inference on
which an issue can be submitted to the jury. Parker v. Employers' Mutual Liability Ins. Co., 440
S.W.2d 43, 47 (Tex. 1969). An expert need not use the magic words "reasonable medical
probability" if the evidence establishes that this is the substance of his or her opinion. Stodghill v.
Tex. Employers Ins. Ass'n, 582 S.W.2d 102, 105 (Tex. 1979). Likewise, even if an expert uses the
phrase "reasonable probability," the evidence is not sufficient when the substance of the expert
testimony raised only mere possibilities, speculation, and surmise. Schaeffer v. Tex. Employers' Ins.
Ass'n, 612 S.W.2d 199, 204 (Tex. 1980). The Texas Supreme Court found such testimony was no
evidence of causation even though the witness testified using the phrase "reasonable probability." 
Id. at 205.
            In this case, Dr. Farris was not asked whether Debra's stress fractures were further damaged
because of her continuing to walk on the leg. He only answered that it was possible for a stress
fracture to "go ahead and finish the break" if a person continues to walk on the leg. 
            There is no testimony in the record that Debra's failure to "stay off her leg" caused her further
injury. This evidence of Dr. Farris does no more than suggest that such further damage is
conceivably possible in a hypothetical case. We do not find this testimony to constitute evidence
of a causal connection between the acts or omissions of Dr. Farris and the ultimate injury of Debra. 
We believe that this testimony is no more than a mere possibility, speculation, and surmise and is
no evidence of reasonable medical probability of a causal connection between Dr. Farris' acts or
omissions and the injury of Debra. See id. at 204; Lenger, 455 S.W.2d at 707.
            We conclude there is no material fact issue raised by the evidence that any action or omission
of Dr. Farris was a proximate cause of Debra's injuries.
            We affirm the judgment of the trial court.


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 17, 2005
Date Decided:             October 26, 2005




t-family: 'Arial', sans-serif">Thus, the Hardys argue that the failure to use such diagnostic procedures was not in
accordance with the applicable standard of care. 
          The standard of care for a doctor is what a reasonable and prudent doctor would
have done under the same or similar circumstances. See Snow v. Bond, 438 S.W.2d 549,
550–51 (Tex. 1969). Identifying the standard of care is critical because "[w]hether a
defendant breached his or her duty to a patient cannot be determined absent specific
information about what the defendant should have done differently." Palacios, 46 S.W.3d
at 880. 
          The statements on which the Hardys rely are not statements of a standard of care. 
The first statement refers to "[a]n important consideration"—not a standard of care—"which
would help discern procedures to be followed." The report then identifies that "important
consideration" as "a demonstration of an adequate run-off to the vessels supplying the
legs." And the second sentence refers to two tests presumably used in diagnosing or
treating diseases of the lower extremities. The report does not state the procedures or
treatments that should have been followed when Clyde complained of leg pain; instead,
it merely states the general procedures and tests used to diagnose and treat "ischemic
disease of the lower extremities." 
          Cassella's further statement—that Marsh's failure to seek consultation with a
vascular surgeon and to use "such diagnostic means" was not in accordance with the
applicable standard of care—does not put Marsh on notice of the specific conduct at issue. 
"It is not sufficient for an expert to simply state that he or she knows the standard of care
and concludes it was [or was not] met." Palacios, 46 S.W.3d at 880; see Chopra v.
Hawryluk, 892 S.W.2d 229, 233 (Tex. App.—El Paso 1995, writ denied). Nowhere does
Cassella's report identify Clyde's specific symptoms requiring consultation with a vascular
surgeon, when such consultation was required, or what treatment by such surgeon was
required. Neither does the report specify what results the diagnostic tests would have
been expected to reveal or what treatment would have been appropriate as a result of
those tests. 
          When the conclusory statements in the expert report do not put a defendant on
notice of the conduct complained of and allow the trial court to deduce that the suit has
merit, Section 74.351(l) affords the trial court no discretion but to conclude, as the trial
court did here, that the report does not represent a good-faith effort to provide a fair
summary of the standard of care and how it was breached, as Section 74.351(r)(6)
requires. Because the 120 days prescribed by Section 74.351(a) had passed when the
trial court made that determination, Section 74.351(b) required the court to dismiss the
Hardys' claims against Marsh with prejudice. 
          C.       The Expert Report Failed To Establish a Causal Relationship
          The Hardys rely mostly on one paragraph in the report to establish causation:
It is my opinion that this patient should have had a consultation with a
vascular surgeon in view of his complaints before his discharge on 8-9-02. 
I recognize fully the importance of his other medical problems. It is my
opinion then that if this patient had had more immediate treatment that a
salvage of his right leg would have been more probable.

Nothing in this paragraph links Marsh's alleged inaction (immediate treatment as opposed
to discharge) to Clyde's injury (the amputation). The report merely states that Clyde
"should have had a consultation with a vascular surgeon." It does not state what additional
procedures or treatment would have been provided by the surgeon. Nor does it connect
the consultation to avoidance of the amputation. Nowhere in the expert report does
Cassella set forth factors or explain the medical basis for his opinion that "if this patient
[Clyde] had had more immediate treatment that a salvage of his right leg would have been
more probable." 
          While a "fair summary" is something less than all the evidence necessary to
establish causation at trial, even a fair summary must contain sufficiently specific
information to demonstrate causation beyond mere conjecture in order to meet the Code's
requirements and satisfy the Palacios test. See Wright, 79 S.W.3d at 52. Cassella's report
fails to provide sufficiently specific information to show more than speculation on the
element of causation.
          We conclude it was well within the trial court's discretion to find that the report did
not meet the Code's requirement on the element of causation and to dismiss with prejudice
the Hardys' claims against Marsh. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), (l).
Granting An Extension

          In the Hardys' second issue, they contend the trial court abused its discretion in
denying their motion for a thirty-day extension because, in case of an inadequate expert
report, "may" in Section 74.351(c) must be read as a "shall" or very close to a "shall." See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). 
          Section 74.351(c) provides:
If an expert report has not been served within the period specified by
Subsection (a) because elements of the report are found deficient, the court
may grant one 30-day extension to the claimant in order to cure the
deficiency. 
 
The use of the word "may" in a statute shows that the provision is discretionary and not
mandatory. Roberts v. Med. City Dallas Hosp., Inc., 988 S.W.2d 398, 402 (Tex.
App.—Texarkana 1999, pet. denied); Weldon v. Weldon, 968 S.W.2d 515, 518 (Tex.
App.—Texarkana 1998, no pet.). When a trial court's function is discretionary and not
mandatory, the reviewing court should give deference and wide latitude to the decision of
the trial court. Roberts, 988 S.W.2d at 402. We should reverse only on a showing of a
clear abuse of discretion. Id. 
          The Hardys argue that the Legislature has not provided any guidance as to what the
word "may" means in this provision. Hence, in the absence of any guidance, "may" should
be treated as "shall." We disagree. The word "may" creates discretionary authority. See
Tex. Gov't Code Ann. § 311.016(1) (Vernon 2005). By using the word "may," Section
74.351(c) plainly vests the trial court with discretion to grant an extension. See Tex. Gov't
Code Ann. § 312.002 (Vernon 2005) ("words shall be given their ordinary meaning"). The
Hardys have not presented us with authority to hold otherwise. 
          We agree that a trial court should not arbitrarily or unreasonably withhold an
extension. However, as pointed out to the trial court at the hearing on Marsh's motion to
dismiss, the Hardys gave presuit notice of their claims almost a year before filing suit. The
trial court could have reasonably believed the Hardys had already had sufficient time to
obtain an adequate report. Under these circumstances, we cannot say the trial court
abused its discretion in refusing to grant an extension.
Conclusion
          We affirm the trial court's judgment. 
 


                                                                          Donald R. Ross
                                                                           Justice

Date Submitted:      July 6, 2005
Date Decided:         August 17, 2005