In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00014-CV


______________________________




ROSEMARY MOORE, INDIVIDUALLY AND ON BEHALF OF THE ESTATE

 OF HEATHER MOORE, DECEASED, Appellant



V.



MARK E. SUTHERLAND, M. D., AND 


COLLOM & CARNEY CLINIC ASSOCIATION, Appellees




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 00C0361-202




 




Before Ross, Carter and Cornelius,* JJ.


Opinion by Justice Cornelius



___________________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Rosemary Moore, Individually and on behalf of the Estate of Heather Moore, deceased,
appeals from the dismissal of her medical malpractice suit against Mark E. Sutherland, M.D. and
Collom & Carney Clinic Association (the Clinic). In two points of error, Moore contends that the
trial court abused its discretion: (1) by dismissing her claim for failing to file an expert report
complying with the requirements of Tex. Rev. Civ. Stat. Ann art. 4590i, § 13.01 (Vernon Supp.
2003); and (2) by denying her request for a thirty-day extension to file a new report.

 On March 3, 2000, Moore filed suit against Sutherland and the Clinic, alleging medical
negligence. She alleged that, on March 5, 1998, Heather Moore was admitted to St. Michael
Hospital for a gastric ulcer and reflux diagnosis. On that same date, Sutherland, a physician at the
Clinic, performed an operation called "vagotomy and antrectomy." Moore was discharged from the
hospital on March 13 and died on March 16 from "bile peritonitis and small bowel volvulus due to
ruptured common bile duct." 

 Rosemary Moore, the daughter of Heather Moore, timely filed her expert report in letter
form. The letter is dated May 2, 2000, from Brent H. Miedema, M.D., F.A.C.S. On August 24, 2001,
Sutherland and the Clinic moved to strike the expert report and dismiss Moore's suit because the
report failed to represent a good faith effort to comply with the statutory requirements of an expert
report. On October 11, 2001, the trial court found that: (1) plaintiff's expert report failed to comply
with Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d); and (2) such failure was not the result of an
accident or mistake. In re Collom & Carney Clinic Ass'n, 62 S.W.3d 924, 927 (Tex. App.-
Texarkana 2001, orig. proceeding). Moore now appeals.

 Moore first contends that the trial court erred by dismissing her suit pursuant to Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 13.01. Dismissal of a cause of action under Article 4590i, Section
13.01 is treated as a sanction and is reviewed for an abuse of discretion. See Am. Transitional Care
Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001). An abuse of discretion occurs when
a trial court acts in an arbitrary or unreasonable manner or without reference to any guiding
principles. See Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999). A trial court does not abuse
its discretion simply because it may decide a matter within its discretion differently than an appellate
court. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). However, a trial
court has no discretion in determining what the law is or in applying the law to the facts. Thus, "a
clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of
discretion." Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) requires a plaintiff asserting a healthcare
liability claim to submit an expert report, along with the expert's curriculum vitae, as to each
physician or healthcare provider named as a defendant in the suit, no later than the 180th day after
filing suit. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d). The Act describes an expert report
as a written report providing "a fair summary of the expert's opinions . . . regarding applicable
standards of care, the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure and the injury, harm,
or damages claimed." Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). 

 If a claimant furnishes a report within the time permitted, a defendant may file a motion
challenging the report. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(l). The trial court shall
grant the motion only if it appears to the court, after hearing, that the report does not represent a good
faith effort to comply with the statutory definition of an expert report. See Tex. Rev. Civ. Stat.
Ann. art. 4590i, § 13.01(l); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d at 877-78.

 If a report omits any of the statutory elements, it cannot be a good faith effort. Id. at 879. 
A report that merely states the expert's conclusions about the standard of care, breach, and causation
is not sufficient. Id. In determining whether the report represents a good faith effort, the trial court's
inquiry  is  limited  to  the  four  corners  of  the  report.  Tex.  Rev.  Civ.  Stat.  Ann.  art.  4590i,
§ 13.01(r)(6); Palacios, 46 S.W.3d at 878. 

 The expert report must set forth an applicable standard of care and a breach of that standard. 
Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). The standard of care for a physician is what
an ordinarily prudent physician would do under the same or similar circumstances. Palacios, 46
S.W.3d at 880. Identifying the standard of care is critical: whether a defendant breached his duty
to a patient cannot be determined absent specific information about what the defendant should have
done differently. Id. "While a 'fair summary' is something less than a full statement of the applicable
standard of care and how it was breached, a fair summary must set out what care was expected, but
not given." Id. 

The expert's report must also contain information on causation. It is not enough for a report
to contain conclusory insights about the plaintiff's claims. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002). Rather, the expert must explain the basis of the statements and link his
conclusions to the facts. Id. (citing Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)).

 Moore presented an expert report in letter form from Miedema. Miedema's letter, in pertinent
part, states:

 It is my opinion that Dr. Sutherland should have had a high index of suspicion for a
bile duct leak due to his dissection in this region. The patient most likely developed
her bile duct leak on 3/8/98 when she developed abdominal pain and an increased
need for narcotics. Most surgeons would have instituted a diagnostic evaluation to
rule out bile peritonitis between 3/9/98 and 3/13/98. Dr. Sutherland's failure to do
so was below the standard of care. Had the diagnosis of bile peritonitis been made
before discharge from the hospital, treatment would have prevented the patient's
death. 


 To comply with the expert report requirement, the plaintiff must only make a good faith
attempt to provide a fair summary of the expert's opinions. Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 13.01(1); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d at 875. To constitute
a good faith effort, the report must discuss the standard of care, breach, and causation with sufficient
specificity to inform the defendant of the conduct the plaintiff has called into question, and to
provide a basis for the trial court to conclude that the claims have merit. Id.

 Analyzing Miedema's report, we see that it summarizes his opinions of the standard of care,
the breach, and causation in these particulars:

Standard of Care:

 Dr. Sutherland should have had a high index of suspicion for a bile duct leak due to
his dissection in this region.


 . . . . 


 Most surgeons would have instituted a diagnostic evaluation to rule out bile
peritonitis between 3/9/98 and 3/13/98 [due to her developed abdominal pain and
increased need for narcotics on 3/8/98.] Dr. Sutherland's failure to do so was below
the standard of care.


Breach:


 Dr. Sutherland's failure to do so [institute a diagnostic evaluation to rule out bile
peritonitis between 3/9/98 and 3/13/98] was below the standard of care.


Causation:


 Had the diagnosis of bile peritonitis been made before discharge from the hospital,
treatment would have prevented the patient's death.


 We believe the report is a good faith attempt to give a fair summary of the standard of care, 
Sutherland's breach and the time of his breach, and the cause of Moore's death. The magic words
are not always used, but magical words are not necessary. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
at 53. It is the substance of the opinions, not the technical words used, that constitutes compliance
with the statute. The substance of these statements gave fair notice to Sutherland and the Clinic of
(1) the standard of care, i.e., what most surgeons would do; (2) what Sutherland did wrong, i.e., the
failure to make a diagnostic evaluation for bile peritonitis; and (3) the cause of Moore's death, i.e.,
the failure to diagnose and treat bile peritonitis. 

 The expert report need not present evidence as if it were litigating the merits of the case. It
may be informal, and the information presented does not need to meet the same requirements as
evidence offered in a summary judgment proceeding or in a trial. Am. Transitional Care Ctrs. of
Tex., Inc. v. Palacios, 46 S.W.3d at 879.

 Sutherland and the Clinic contend that Miedema's report only states conclusions. We
disagree. A statement that most surgeons would have instituted a diagnostic evaluation for bile
peritonitis between March 9, 1998 and March 13, 1998, due to Moore's developed abdominal pain
and increased need for narcotics and that Sutherland's failure to do so was below that standard of
care is not a conclusionary statement. It is an opinion containing specific facts.

 Sutherland and the Clinic rely on the Palacios and Wright cases to support their position that 
Meidema's report is inadequate. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48; Am. Transitional
Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873. But the facts in those two cases are clearly
distinguishable from our case. For example, in Palacios there was no statement whatsoever in the
expert report as to what was the standard of care. There was only a statement that the medical care
rendered to Palacios was below the accepted and expected standard of care. There was no statement
of what care was expected but not given. Of course, that was insufficient.

 In Wright, our Supreme Court held that the expert report gave a fair summary of the standard
of care and the breach of that standard, but held that the report did not fairly summarize the causation
because the statement of causation was conclusionary. The statement of causation was "if the x-rays
would have been correctly read and the appropriate medical personnel acted on those findings then
Wright would have had the possibility of a better outcome." As noted by the Supreme Court, this
statement did not summarize the causal relationship between the hospital's failure to meet the
standard of care and the patient's injury because "the report simply opines that Barbara might have
had 'the possibility of a better outcome' without explaining how Bowie's conduct caused injury to
Barbara."

 In our case, Miedema's report charged Sutherland with negligence in failing to diagnose and
treat bile peritonitis. His report specifically stated what Sutherland should have done and what
happened because he failed to do it. The statement of causation is not a conclusion or a statement
of a mere possibility, as in the Wright case, but is a positive statement of fact: "Had the diagnosis
of bile peritonitis been made before discharge from the hospital, treatment would have prevented the
patient's death."

 Miedema's report did not charge Sutherland with a negligent or substandard method of
treatment. Rather, it charged that Sutherland's complete failure to diagnose and complete failure to
treat the bile peritonitis were below the standard of care, and that such failures caused Moore's death. 
We believe this report gives Sutherland and the Clinic fair notice of what Miedema considers the
standard of care, how Sutherland breached that standard, and how that breach caused Moore's death.

 We also find that the trial court erred in denying Moore's motion for an extension of time
under Section 13.01(g) because Moore established that the failure to file a complying report was
neither intentional nor the result of conscious indifference, but was the result of an accident or
mistake.

 We review the trial court's ruling on a motion for extension of time to file a complying report
under an abuse of discretion standard. See Doades v. Syed, 94 S.W.3d 664, 672 (Tex. App.-San
Antonio 2002, no pet.).

 Subsection (g) of Article 13.01 states:

 Notwithstanding any other provision of this section, if a claimant has failed to
comply with a deadline established by Subsection (d) of this section and after hearing
the court finds that the failure of the claimant or the claimant's attorney was not
intentional or the result of conscious indifference but was the result of accident or
mistake, the court shall grant a grace period of 30 days to permit the claimant to
comply with that subsection. A motion by a claimant for relief under this subsection
shall be considered timely if it is filed before any hearing on a motion by a defendant
under Subsection (e) of this section. 


Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g). 


 According to the statute's plain language, an extension of time must be granted if the
requirements of Section 13.01(g) are met, and if the motion sets forth facts that, if true, would negate
intentional or consciously indifferent conduct. Horsley-Layman v. Angeles, 968 S.W.2d 533, 536
(Tex. App.-Texarkana 1998, no pet.) (citing Dir., State Employees Workers' Comp. Div. v. Evans,
889 S.W.2d 266, 268 (Tex. 1994)). Some excuse, but not necessarily a good excuse, is sufficient
to warrant an extension of time to file the expert report, so long as the act or omission causing the
failure to file the report was, in fact, accidental. Horsley-Layman v. Angeles, 968 S.W.2d at 536. 
With respect to Section 13.01(g), the movant has the burden to show some excuse of accident or
mistake to establish that he or she did not act "intentionally" or with "conscious indifference." Id.;
De Leon v. Vela, 70 S.W.3d 194, 200 (Tex. App.-San Antonio 2001, pet. denied). The trial court
abuses its discretion if it dismisses a case when the failure to file the expert report was not intentional
or the result of conscious indifference. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(g); Landry v.
Ringer, 44 S.W.3d 271, 275 (Tex. App.-Houston [14th Dist.] 2001, no pet.); Horsley-Layman v.
Angeles, 968 S.W.2d at 536. 

 Here, Moore included in her written response to the motion to dismiss, a request for an
extension of time under subsection (g). In this response, Moore asserted that, if her expert report
was inadequate, it was the result of her attorney's mistake in misunderstanding the requirements of
the statute. In the hearing on the motion for extension, Moore's attorney elaborated on his mistaken
understanding of the statutory requirements, and stated to the trial court that he filed his expert report
before the Texas Supreme Court rendered its opinion in the case of American Transitional Care
Centers of Texas, Inc. v. Palacios, 46 S.W.3d 973, and was therefore unaware of the requirements
for expert reports set out in that case. Because of his mistaken belief that the report he filed was
sufficient under the law, Moore's counsel urged the trial court to grant him an extension so he could
file an adequate report. Aside from Sutherland's and the Clinic's argument that the Palacios case did
not change the law, they did not controvert Moore's counsel's representations that he was mistaken
about the requirements of Tex. Rev. Civ. Stat. Ann art. 4590i, § 13.01, or that his failure to file
what they contended was an adequate expert report was not the result of intentional disregard or
conscious indifference, but was an accident and mistake.

 Sutherland and the Clinic contend that Moore's counsel's statements to the trial court at the
hearing do not constitute evidence because the statements were not under oath. Normally, an
attorney's statements must be under oath to constitute evidence. Banda v. Garcia, 955 S.W.2d 270,
272 (Tex. 1997). This can be waived, however, by failing to object when the opponent of the
evidence knows or should know that an objection should be made. Id.; Knie v. Piskun, 23 S.W.3d
455, 463 (Tex. App.-Amarillo 2000, pet. denied). As in Banda v. Garcia and Knie v. Piskun, the
evidentiary nature of Moore's counsel's statements at the hearing was apparent. He was seeking to
prove that, if his expert report was inadequate, his act in filing the inadequate report was the result
of an accident or mistake, and was not in intentional disregard or conscious indifference of the law. 
We conclude that Sutherland's and the Clinic's failure to object to counsel's statements waived the
oath requirement.

 As noted earlier, the reason for failing to strictly comply with Section 13.01 need not
necessarily be a good excuse; some excuse will suffice so long as the act or omission was, in fact,
an accident or mistake. Landry v. Ringer, 44 S.W.3d at 275. And even admitted negligence on the
part of the party seeking an extension will not defeat his right to such an extension. Roberts v. Med.
City Dallas Hosp., Inc., 988 S.W.2d 398, 403 (Tex. App.-Texarkana 1999, pet. denied).

 Our courts have ruled that the terms "mistake or accident" and "conscious indifference"
should be construed similarly to their application in the default judgment context. Horsley-Layman
v. Angeles, 968 S.W.2d at 536; In re Rodriguez, No. 07-02-00335-CV, 2003 Tex. App. LEXIS 1644
(Tex. App.-Amarillo Feb. 20, 2003, no pet. h.). Various courts, including this one, have held that
an attorney's misunderstanding of the requirements of the law or of a specific statute, as well as
calendaring errors or faulty office procedures, are sufficient to show mistake or accident and a lack
of conscious indifference. In re Rodriguez, No. 07-02-00335-CV, 2003 Tex. App. LEXIS 1644, *3;
Knie v. Piskun, 23 S.W.3d at 462; Presbyterian Health Care Sys. v. Afangideh, 993 S.W.2d 319
(Tex. App.-Eastland 1999, pet. denied); Roberts v. Med. City Dallas Hosp., Inc., 988 S.W.2d at 403;
Horsley-Layman v. Angeles, 968 S.W.2d at 536.

 We conclude that Moore's counsel did not act with conscious indifference or intentional
disregard, but showed an accident or mistake, and thus was entitled to the thirty-day extension in
which to file a proper expert report. We note that, even though the trial court believed Moore had
not met the legal requirements of showing accident or mistake, he nevertheless felt that Moore
deserved an extension and attempted to grant her one. See In re Collom & Carney Clinic, 62 S.W.3d
924 (Tex. App.-Texarkana 2001, orig. proceeding).

 For all of the reasons stated, we reverse the judgment and remand the cause to the trial court
for further proceedings consistent with this opinion.



 William J. Cornelius

 Justice*


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


Date Submitted: April 16, 2003

Date Decided: May 22, 2003




cal%20Board%20-Two%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.8in 1.0in .8in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-041-CV%20In%20re%20The%20Texas%20Medical%20Board%20-Two%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00041-CV

                                                ______________________________

 

 

 

                                          IN
RE:  THE TEXAS MEDICAL BOARD

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                                        Opinion
by Justice Moseley

                                                                              

                                                                              








                                                                   O P I N I O N

 

            This mandamus proceeding arises from
the prosecution of Dr. Oscar Reichert (the real party in interest) by the State
of Texas on charges of Medicare fraud.  The action has been brought by the Texas
Medical Board (Board), a governmental agency of the State of Texas, charged by
the Texas Legislature with regulating the practice of medicine.  Tex.
Const. art. XVI, § 31; Tex.
Occ. Code Ann. § 151.003 (Vernon 2004), § 152.001 (Vernon Supp. 2009). 

            Pursuant to its duties to license
and regulate physicians, the Board evaluates applications for licensure and
investigates complaints against physicians.  The Boards files generated in connection with
these functions are confidential.  Section
155.007(g) of the Texas Occupations Code provides, in part, that [e]ach report
received or gathered by the board on a license applicant is confidential and is
not subject to disclosure under Chapter 552, Government Code.  Tex.
Occ. Code Ann. § 155.007(g) (Vernon Supp. 2009).  Documents gathered by the Board as part of
any investigation of any licensee are likewise confidential.  Section 164.007(c) of the Texas Medical
Practice Act provides:

Each
complaint, adverse report, investigation file, other investigation report, and
other investigative information in the possession of or received or gathered by
the board or its employees or agents relating to a license holder, an
application for license, or a criminal investigation or proceeding is
privileged and confidential and is not subject to discovery, subpoena, or other
means of legal compulsion for release to anyone other than the board or its
employees or agents involved in discipline of a license holder.  For purposes of this subsection,
investigative information includes information relating to the identity of, and
a report made by, a physician performing or supervising compliance monitoring
for the board.

 

Tex. Occ. Code Ann. § 164.007(c) (Vernon Supp. 2009).

            Here, the documents in question have
been designated by the Texas Legislature as privileged, confidential, and not
subject to discovery or subpoena under Texas law.[1]  

            However, the State of Texas, in
bringing its criminal prosecution, had obtained copies of the Boards records
of the disciplinary action pursuant to an exception to that confidentiality
privilege, Section 164.007(h) of the Texas Occupations Code, which provides:

The
board shall cooperate with and assist a law enforcement agency conducting a
criminal investigation of a license holder by providing information that is
relevant to the criminal investigation to the investigating agency.  Information disclosed by the board to an
investigative agency remains confidential and may not be disclosed by the
investigating agency except as necessary to further the investigation.  

 

Tex. Occ. Code Ann. § 164.007(h).

            On October 5, 2009, the 276th Judicial
District Court of Titus County issued a ruling from the bench requiring the State
to turn over the Boards file to counsel for Reichert.  On May 14, 2010, after having filed an
unsuccessful motion to reconsider, the Board filed a motion for emergency stay
of order of production and motion for leave to submit confidential documents
under seal for in camera review.  This motion
was granted, and on May 19, 2010, following in camera review of the Boards
file, the respondent in this action, the Honorable Webb Biard, renewed and
affirmed his order of May 7, 2010, and the Honorable William Porters order of
October 5, 2009, requiring the State to produce the underlying documentation
that supports the mediated order between Reichert and the Board. 

            The Board contends that the respondent
erred in ordering the disclosure of confidential Board files.  Reichert, the real party in interest,
maintains that the State is obligated to turn over evidence in its possession
that is both favorable to the accused and material to guilt or punishment.  Brady
v. Maryland, 373 U.S. 83, 87 (1963). 
Indeed, Reicherts right to discover exculpatory evidence material to
guilt or punishment in connection with his criminal prosecution is based on the
United States Constitution.  Id.[2]  If there were exculpatory evidence contained
within the Board files, Reichert would be entitled to be supplied with that
evidence. 

            Mandamus issues only when the
mandamus record establishes (1) a clear abuse of discretion or the violation of
a duty imposed by law and (2) the absence of a clear and adequate remedy at
law.  Cantu
v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 83940 (Tex. 1992).  A trial court clearly abuses its discretion
when it reaches a decision which is so arbitrary as to amount to a clear and
prejudicial error of law.  Walker, 827 S.W.2d at 839.   While it is true that the reviewing court
may not substitute its judgment for that of the trial court with respect to the
resolution of factual issues, review of a trial courts determination of legal
principles controlling its ruling is much less deferential.  Id.
at 83940.  A trial court has no
discretion in determining what the law is and in the application of the law to
the facts.  Id. at 840.  In determining
whether the trial court abused its discretion in the present case, we treat the
trial courts grant of the requested privileged Board file as a legal
conclusion to be reviewed with limited deference to the trial court.  See
id.; In re Doctors Hosp. of Laredo,
Ltd. Pship, 2 S.W.3d 504, 506 (Tex. App.San Antonio 1999, orig.
proceeding). 

            The privileged documents were
submitted under seal to the trial court and were reviewed in camera.  While the trial court ordered the State to
produce the documents, it made no finding that any of the information contained
in the documents would serve to assist Reichert in his defense or would
otherwise be classified as exculpatory evidence, as contemplated by Brady and its progeny.  Further, we have reviewed the documents which
were ordered to be produced and find no such exculpatory information contained
within them.

            In the absence of such a finding,
together with our own in camera review in which we have concluded that there is
no right under Brady for Reichert to
obtain disclosure of the documents, and in the face of the statutorily
privileged status of the documents in question, we are compelled to conclude
that the trial court was without discretion to order disclosure of said
documents.  We further find that the
Board, the relator, has no adequate remedy at law.  We conditionally grant the writ of mandamus
and direct the trial court to vacate its prior order directing the divulgence
of the contents of the Boards file.  We
are confident the trial court will comply, and the writ will issue only if it
fails to do so.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          June 1, 2010

Date
Decided:             June 1, 2010











[1]There
are two categories of documents at issue. 
First, there is the information on which the Texas Medical Board relied
in its disciplinary proceeding before the agency.  These documents were heretofore provided to
Reichert pursuant to Section 164.007(d) of the Texas Occupations Code, which
provides:  

 

                (d)  Not later than the 30th day after the date of
receipt of a written request from a license holder who is the subject of a
formal complaint initiated and filed under Section 164.005 or from the license holders
counsel of record, and subject to any other privilege or restriction set forth
by rule, statute, or legal precedent, and unless good cause is shown for delay,
the board shall provide the license holder with access to all information in
its possession that the board intends to offer into evidence in presenting its
case in chief at the contested hearing on the complaint.  The board is not required to provide:

 

                (1)
 a board investigative report or
memorandum;

 

                (2)  the identity of a nontestifying complainant;
or

 

                (3)  attorney-client communications, attorney work
product, or other material covered by a privilege recognized by the Texas Rules
of Civil Procedure or the Texas Rules of Evidence.

 

                (e)  Furnishing information under Subsection (d)
does not constitute a waiver of privilege or confidentiality under this
subtitle or other applicable law.

 

Tex. Occ. Code Ann. § 164.007(d), (e) (Vernon Supp. 2009).

 

The second
category of documents at issue are those not relied upon by the Board at the
contested hearing.  These documents
consist of board investigative reports or memorandums; the identity of the
nontestifying complainant; and attorney-work product.  The documents within this second category
were disclosed to the State, but were not released to Reichert.  It is this second category of documents the
Board seeks to protect from disclosure to Reichert.  We note that both categories of documents
remain confidential, despite limited disclosure to law enforcement and to
Reichert in accordance with the statute. 


 





[2]A
prosecutor has an affirmative duty to turn over material, exculpatory evidence
to the accused.  Brady, 373 U.S. at 87.  Impeachment evidence is likewise included
within the scope of this rule.  See U.S. v. Bagley, 473 U.S. 667, 676
(1985).  Evidence is material if there
is a reasonable probability that, had the evidence been disclosed to the
defense, the outcome of the proceeding would have been different.  Id.
at 682.  Exculpatory evidence is that
which tends to justify, excuse, or clear the accused of fault or guilt.  Wyatt
v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000).